LORAIN STEEL CO. v. GEORGE HAYES.

1. BRAKEMAN INJURED BY FAILURE OF CONDUCTOR TO PROTECT HIM FROM DANGER MAY RECOVER FROM COMPANY, WHEN.

Where a brakeman is ordered by the conductor to make the coupling of the last cut of three cuts of cars, but demurs for fear of being caught between the cars, but finally takes his position between the cars for such purpose under the promise of the conductor to protect him, and, while in such position, is injured as a result of the negligent act of the conductor in having the engineer back the cars upon him, in such case he is entitled to recover from the company for the injuries sustained, notwithstanding a rule of the company making it the duty of its employes to refuse to obey any order which would imperil their life or limb.

2. PETITION SUFFICIENTLY CHARGES NEGLIGENCE, WHEN.

A petition in such case which alleges that the defendant company by and through its conductor, who was superior in authority to plaintiff, was negligent in ordering him between the cars, and then signaling the engineer to back the cars upon him, and that, in obeying the order, he acted and relied upon the conductor's promise of protection, sufficiently states a cause of action of negligence.

ERROR to Lorain common pleas court.

E. G. & H. C. Johnson and Thomas Ewing, for plaintiff in error:

Plaintiff did not aver want of knowledge, etc., as required by Coal & Car Co. v. Norman, 49 Ohio St. 598 [32 N. E. Rep. 857]; Hesse v. Railway, 58 Ohio St. 167 [50 N. E. Rep. 354].

Presumption that plaintiff knew the dangers of his occupation. Pennsylvania Co. v. McCurdy, 66 Ohio St. 118 [63 N. E. Rep. 585]; LaBatt, Mas. & Serv. Sec. 438.

One who knowing and appreciating the danger, enters upon a perilous work, even though he does so unwillingly and by order of a

superior, must bear the risk he takes. *Richmond & D. Ry.* v. *Finley,* 63 Fed. Rep. 228 [12 C. C. A. 595; 25 U. S. App. 16]; *Johnson* v. *Railway,* 5 Circ. Dec. 290 (11 R. 553); *McLaine* v. *Head,* 71 N. H. 294 [52 Atl. Rep. 545; 58 L. R. A. 462; 93 Am. St. Rep. 522]; *Atchison, T. & S. F. Ry.* v. *Randall,* 40 Kan. 421 [19 Pac. Rep. 783]; *Connor* v. *Saunders,* 9 Tex. Civ. App. 56 [29 S. W. Rep. 1140]; *Keenan* v. *Railway,* 145 N. Y. 190 [39 N. E. Rep. 711; 45 Am. St. Rep. 604]; *Toomey* v. *Eureka Iron & Steel Works,* 89 Mich. 249 [50 N. W. Rep. 850]; *Anderson* v. *Lumber Co.* 47 Minn. 128 [49 N. W. Rep. 664]; *Northrop* v. *Ballard,* 169 Mass. 295 [47 N. E. Rep. 1000; 61 Am. St. Rep. 286]; *Martin* v. *Railway,* 166 U. S. 399 [17 Sup. Ct. Rep. 603; 41 L. Ed. 1051]; *Balch* v. *Haas,* 73 Fed. Rep. 974 [20 C. C. A. 151; 36 U. S. App. 693]; *McGowan* v. *Railway,* 61 Mo. 528; *Schott* v. *Bank,* 49 App. Div. 503 [63 N. Y. Supp. 631]; *Dallemand* v. *Saalfeldt,* 175 Ill. 310 [51 N. E. Rep. 645; 48 L. Ed. 753; 67 Am. St. Rep. 214]; *Ferren* v. *Railway,* 143 Mass. 197 [9 N. E. Rep. 608]; *Overby* v. *Railway,* 37 W. Va. 524 [16 S. E. Rep. 813]; *Russell* v. *Railway,* 47 Fed. Rep. 204; *Richmond & D. Ry.* v. *Rush,* 71 Miss. 987 [15 So. Rep. 133]; *Illinois Cent. Ry.* v. *Winslow,* 56 Ill. App. 462; *Johnson* v. *Railway,* 5 Circ. Dec. 290 (11 R. 553); 1 LaBatt, Mas. & Serv. Secs. 367, 438, 962; *Demers* v. *Deering,* 93 Me. 272 [44 Atl. Rep. 922]; *Kean* v. *Rolling Mills,* 66 Mich. 277 [33 N. W. Rep. 395; 11 Am. St. Rep. 492]; *Wilson* v. *Tremont & Suffolk Mills,* 159 Mass. 154 [34 N. E. Rep. 90]; *Linch* v. *Manufacturing Co.* 143 Mass. 206 [9 N. E. Rep. 728]; *Hoth* v. *Peters,* 55 Wis. 405 [13 N. W. Rep. 219].

If plaintiff while in the service of defendant knew, or by the use of ordinary care might have known, of the defects in the couplers of which he complains in his petition and the difficulty in making couplings with them, and with such knowledge or means of knowledge, he continued in the service of defendant, and in the use of such couplers without notifying defendant of such defects, he must be held to have assumed the risks incident to such use thereof. Bailey, Mas. Liab. 142, *et seq.*

Whether or not a rule is a reasonable one is purely a question of law for the court. The reason, and a sufficient one, for thus holding, is, that, as a question of law, certainty is ascertained. If it be submitted to juries, one jury may hold a rule to be reasonable, and the next may hold the reverse. Bailey, Mas. Liab. 75; *Wolsey* v. *Railway,* 33 Ohio St. 227.

It was plaintiff's duty to take ordinary care to learn of the dangers which he was likely to encounter in going between the cars in question,

Steel Co. v. Hayes.

and he could not go between said cars knowing the perils and dangers that would thus beset him, except at his own risk, and if he did go between said cars, and such act on his part proximately in whole or in part contributed to produce the injury, he claims to have received, he cannot recover. Bailey, Mas. & Serv. 158.

If the plaintiff had equal knowledge with the conductor of the danger to be apprehended by going between the cars in question while the crew were attempting to couple other cars, making up the same train by impact, he must be held to have accepted the risk of such act, notwithstanding the jury find that the conductor directed him to go between the cars and promised to protect him if he would do so. Buswell, Pers. Inj. 406, 407, and cases.

The duty of determining the issues to be tried in a case devolves upon the court, and should not be delegated to the jury, and for the court to instruct the jury that they are to take the pleadings, and to determine the admissions, etc., therein is erroneous. *Lake Shore & M. S. Ry.* v. *Beckwith,* 12 C. D. 559.

A charge putting into a case an issue not made by the pleadings, and not raised by the evidence is error. *Little Miami Ry.* v. *Wetmore,* 19 Ohio St. 110 [2 Am. Rep. 373]; *White* v. *Thomas,* 12 Ohio St. 312 [80 Am. Dec. 347]; *Coal Co.* v. *Estievenard,* 53 Ohio St. 43 [40 N. E. Rep. 725].

Proximate cause. *Loeser* v. *Humphrey,* 41 Ohio St. 378 [52 Am. Rep. 86]; *Aetna Ins. Co.* v. *Boon,* 95 U. S. 117 [24 L. Ed. 395]; *Goodlander Mill Co.* v. *Oil Co.* 63 Fed. Rep. 400 [11 C. C. A. 253; 24 U. S. App. 7].

**Lee Stroup** and **Skiles, Green & Skiles,** for defendant in error.

**HENRY, J.**

This is a proceeding in error to reverse a judgment for $9,250 recovered by the defendant in error, George Hayes, at the January term, 1905, of the Lorain county common pleas court, for injuries sustained by him March 1, 1903, while in the employ of the Lorain Steel Company, at Lorain, Ohio. The injuries consisted chiefly of a mashed right ankle and left arm and disordered kidneys.

A bill of exceptions duly perfected, exhibits all the evidence, and an examination thereof shows that Hayes is practically unable to walk without a crutch or a cane; that his arm is well-nigh useless, and that the condition of his kidneys still gives him pain and necessitates almost hourly micturition. When injured he was thirty-five years old, sound in body, and earning $2.65 per day. While the amount recovered

### Lorain County.

is large, we are unable to say that it is unwarranted by the evidence, or that the jury's verdict was influenced in that behalf by passion or prejudice. Neither are we able to say, on consideration of the affidavits presented upon the motion for a new trial, and incorporated into the bill of exceptions, that a quotient verdict, so-called, was, prior to its ascertainment, agreed by the jurors to be binding upon them in this case, or that there was a failure on the part of any juror to give his individual untrammeled assent to the amount of the verdict after its ascertainment and before its rendition.

We cannot set the verdict aside on the ground of misconduct of the jury. But we may observe in passing, that the practice by jurors of agreeing in advance to an indeterminate quotient verdict is of course utterly indefensible, and also that the alleged immemorial practice by attorneys in this county of listening to the deliberations of juries has certainly not ripened into a prescriptive right, nor should it continue.

Coming now to the circumstances attending the accident, the undisputed facts are, that Hayes was one of a crew of five men employed in the railroad department of the plaintiff in error's extensive business. These five were: Colvig, conductor; Doyle, engineer; Tisdale, fireman; Terwilliger, head brakeman, and Hayes, rear brakeman. The fireman and head brakeman did not testify. The others did. On the night of March 1, they all came up on a locomotive to where eight cars were standing on an elevated track over certain bins for receiving ore, limestone and coke. These eight cars had been unloaded there by emptying their contents, through the bottoms and between the rails of the track into the bins below. The eight cars stood there empty, in four cuts of two cars each, ready to be coupled together and hauled away.

The conductor and two brakemen stepped down from the locomotive to the elevated platform which ran beside the track, to see to the coupling of the cars. The cars were equipped with automatic couplers, some of which, however, had become clogged with ice, or otherwise, so that they failed to couple readily by mere impact and required some manipulation by the men. There were three couplings to be made, namely, between the first and second cuts, between the second and third and between the third and fourth, in addition to the coupling to be made between the engine and first cut. The first was made without difficulty. Several futile attempts were made to accomplish the second. Colvig and Terwilliger were busy with this; Hayes meanwhile went into the narrow opening between the third and fourth cuts to prepare for the third coupling. While there the locomotive and six cars moved, crush-

ing him against the seventh car, and finally causing him to drop into the bin below.

Hayes says the conductor ordered him to adjust the coupler there, and that when he demurred for fear of being caught, the conductor promised to protect him.

Hayes further seeks to prove by the engineer, Doyle, that notwithstanding this promise, the conductor presently gave a signal to the engineer to back up, which he did, thereby causing the accident. It is pointed out by plaintiff in error that inasmuch as they had not yet tried to make the third coupling by impact, the conductor could not have known that there was anything there needing adjustment, and therefore the allegation of the petition to the contrary is untrue and Hayes' story is improbable. But there is some evidence that, in the attempt to couple the second and third cuts, the impact there had been hard enough to close the gap between the third and fourth cuts, without, however, causing them to couple; and the gap was opened again by the rebound.

The conductor denies that he ordered Hayes to adjust that coupling; denies that he promised to protect him, and denies that he signaled the engineer to back. He further declares that Terwilliger, who was with him, did not give such signal. Hayes says he himself did not give the signal, and of course he did not. Doyle is positive that he received the signal, and says it was given, he thinks, by the conductor, the latter's lantern being the only one in use and in sight at that moment. And it is clear that if there was any signal, it came, not from Terwilliger or Hayes, but from the conductor, Colvig. The jury might well find under these circumstances that Doyle would hardly have backed without a signal, and that his recollection is correct rather than Colvig's. So, too, they might well find that Hayes would hardly have gone into the narrow opening between cars, when the locomotive was likely to be backed at any moment, unless the conductor had ordered or at least knew of his action so as to protect him; and hence that Hayes' story, notwithstanding his interest, is, under the circumstances, more probable than Colvig's.

The theory of plaintiff below is, of course that the conductor forgot Hayes' situation when he gave the order to back. After reading all the testimony we are impressed that this theory is by no means improbable. We cannot find that the evidence failed to support the verdict with respect to the negligence of the conductor in this behalf.

It is objected, however, that the conductor could not bind the company by any bargain he made with Hayes to insure his safety; and,

indeed, the court below so charged the jury, restricting the effect of Hayes' testimony in that behalf to the question whether the conductor gave the order to back, knowing plaintiff was between the cars. This, we think was the bearing that testimony properly had; and if it might also, as plaintiff in error points out, affect the question of contributory negligence, its tendency was rather to excuse Hayes than to inculpate him, and hence he is the only one who could complain of the limitation.

But the plaintiff in error further claims in this connection that Hayes was contributorily negligent in that he violated the requirements of a certain "Notice to Employes" of which he had knowledge and which reads in part as follows:

"It is hereby made the duty of every employe, under all circumstances, to take sufficient time, before exposing himself to dangers, to make such examination [as the one before mentioned in the notice], and to refuse to obey any orders which would imperil his life or limb."

It is urged that Hayes protested against, and therefore knew the hazardous nature of, the thing which he claims he was told to do, and that under this rule it was his duty to refuse to obey the order. This contention, however, neglects the important element on which Hayes says he relied, namely, the conductor's promise to protect him. With that promise, it was not obedience to the order that imperiled his life or limb, but the nonfulfilment of the conductor's duties. It was not outside the scope of the conductor's authority to conduct himself so as not to injure Hayes, when he knew that Hayes was between the cars. On the contrary this was precisely his duty. *Lake Shore & M. S. Ry.* v. *Lavalley,* 36 Ohio St. 221. To give expression thereof to Hayes was but an ordinary incident of the co-operation requisite in the work of railroad crews; and the same is true of Hayes' reliance thereon. The only thing the conductor promised to do was a thing he was bound to do anyway, under the circumstances.

The question of contributory negligence was submitted to the jury, with instructions which we think were correct, and the evidence in that behalf seems to us to support the verdict so far as this question is concerned.

Another claim urged by plaintiff in error, is, that the petition failed to state a cause of action. There are five specifications of negligence in the petition. The first three allege that the company was negligent in providing or maintaining defective appliances and premises; but these were expressly abandoned by the plaintiff below upon the trial; and the court so charged the jury.

The fourth alleges that, under these and other circumstances men-

Steel Co. v. Hayes.

tioned, the defendant below, by and through its conductor, superior in authority to plaintiff, was negligent in ordering him to go between the cars, and then signalling the engineer to back upon him.

The fifth differs from the fourth in that it alleges the conductor's promise of protection.

It is claimed that inasmuch as there is no allegation and no pretense that Hayes was ignorant of whatever defects there were in the cars and premises, but nevertheless in every instance these defects are alleged as part and parcel of the circumstances under which the conductor's conduct is averred to be negligent, there is a complete failure to allege any actionable negligence whatever. The answer to this contention is, that it was of course unnecessary to allege that Hayes did not know that the conductor would signal the engineer to back, and it is quite immaterial to the sufficiency of the petition whether he knew or did not know all the attending circumstances by or amid which the conductor's conduct became negligent. It is enough to say that Hayes was between the cars by the order or to the knowledge of the conductor and that the latter negligently signaled the engineer to back the train while Hayes was there, thereby directly causing the injuries complained of. This is the marrow of the case, and we think it is sufficiently alleged. We do not think the court below erred in overruling the objection to the introduction of any evidence under this petition, nor in overruling other motions thereafter made on the same ground.

Another claim urged here by plaintiff in error is, that the court erred in allowing the plaintiff to testify that he was performing his work under the directions of James Colvig, the conductor. It is so perfectly patent from the whole case that this was true, that we find no prejudicial error in it.

It is also claimed that the court erred in excluding the written statement of Doyle and Colvig made on the night of the accident. It was offered to contradict Doyle, but we fail to find any proper foundation for the introduction of this paper in this behalf. Moreover it plainly purports to be Colvig's statement, and if the additional signature is in fact Doyle's, it does not clearly commit him to the statements therein contained. We think it was properly excluded.

The plaintiff in error's requests to charge that were refused as well as its exceptions to the general charge have been carefully scrutinized without revealing any reversible error. To state reasons in detail would be a repetition in the main of what has already been said and would unnecessarily prolong this opinion. The judgment is affirmed.

**Marvin** and **Winch, JJ.,** concur.